## LESNIK v. PUBLIC INDUSTRIALS CORPORATION.

District Court, S. D. New York.

April 30, 1943.

See, also, 51 F.Supp. 994.

David Haar, of New York City, for plaintiff.

Satterlee & Warfield, of New York City (R. Randolph Hicks and John J. Dunne, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

The defendant, Public Industrials Corporation, has moved for leave to join C. Herbert Davison, Guy George Gabrielson and Albert L. Wolfe as third-party defendants to the defendant's counterclaim in this action, and for leave to serve them with copies of its answer and counterclaim.

The plaintiff's claim for relief, as stated in his complaint, is based on a $10,000 face value note, originally made by the defendant to the Bank of New York and Trust Company on January 15, 1938, and assigned to Harry Lesnik, plaintiff herein, on February 2, 1942 by the Bank of New York (formerly the Bank of New York and Trust Company). The consideration for the assignment of the note, all the assignor's rights thereunder and a transfer to the assignee of the collateral security for the note was the sum of $11,500. The note's collateral security was a certificate representing 500 shares of the preferred stock of the Hightstown Rug Company. Suffice it to say that although the note had detailed provisions for payment of interest on the face amount from June 1, 1932 at 5% per annum and for extension of the time for payment in accordance with its terms, that the note was not extended beyond January 15, 1942, and that at the due date there was payable the principal sum of $9,749.85, plus interest on $10,000 from May 1, 1933 to June 22, 1933, and on the said $9,749.85 from the latter date. After the aforesaid assignment of the note and security to the plaintiff, demand was made for payment but the note remained unpaid. On February 25, 1942, the defendant's rights in the 500 shares of the preferred stock of the Hightstown Rug Company, which had been deposited as security for the payment of the

note, were foreclosed at public sale after notice to the defendant, on February 25, 1942, in this city. The stock brought only $500, the costs and expenses of the sale were $108.50, and the plaintiff was therefore left with a balance of $391.50 to apply to the note obligations. (That the stock was known to be worth more is apparent from the price plaintiff claims he paid for the note.) On March 4, 1942, the balance due and payable, $13,606.81, was demanded of the defendant but payment was refused, and the plaintiff's present action seeks the recovery of that sum with interest from the demand date.

The defendant's answer contains a denial of several of the allegations of the plaintiff's complaint, and, in addition alleges six separate defenses, three of which (the fourth, fifth and sixth) are also denominated as counterclaims. The first defense alleges that the plaintiff bought the collateral from the Bank for $11,500, and that the receipt of that money discharged the note, because the collateral was sold by the Bank to plaintiff in pursuance of the authority contained in the note. The second defense is similar except that it alleges that the agreement of sale was between the Bank and the three persons whom the defendant, by this motion, seeks to join as third-party defendants, and then the defense proceeds to allege that the transfer of the note and collateral was to the plaintiff at the request of the purchasers; that the note was therefore paid and discharged by the sale of the collateral. The third defense is similar to the first two.

The counterclaims are to be found in the fourth, fifth and sixth defenses. In each of the three there appear the common allegations that the defendant is a Delaware corporation; that until 1929 its principal business was financing and reorganizing corporations but that it has not actively engaged in those activities since 1931 and since then has merely held corporate securities which it had previously acquired as a result of its prior activities; that it filed a petition for a Section 77B proceeding, 11 U.S.C.A. § 207, in the United States District Court, Eastern District of New York, on August 28, 1934, and that a plan of reorganization of defendant was confirmed by the court on January 6, 1938; that by the terms of the plan the payment of all secured creditors was deferred for a period of one year from January 15, 1938, and the payment of all unsecured creditors was postponed for one year from January 15, 1940; that the Plan authorized two-thirds in amount of the secured creditors to extend the time of payment of both classes from year to year, and the payment was so extended to January 15, 1942, under that authority; that the plan provided for the deposit in escrow of the defendant's free assets after the reorganization expenses were first paid, and that said deposit was to secure the defendant's creditors ratably; that the only asset of substantial value so deposited was 2,298 shares of the preferred stock of the Hightstown Rug Company out of a total issue of 10,872 shares; that in addition, the secured creditors held 1,782 shares of the same stock, and that the defendant had an equity in them, which equity was the only other substantially valuable asset of the defendant; that the annual cumulative dividend of the aforementioned stock was 7% and that it was upon the defendant's expected receipt of those dividends that the contemplated success of the plan was based.

The fourth and fifth counterclaims, in addition to the common allegations just recited, alleged that the three parties sought to be joined were and are the owners, individually or collectively, of substantially all of the balance of the preferred stock of the Hightstown Rug Company, in addition to substantially all of its common stock, and that they had the sole voting power for the election of its directors; that they caused themselves to be so elected for the years 1939 through 1942; that they, constituting a controlling majority of the Board and acting "together with the plaintiff wickedly * * * conspired to wreck said Plan of Reorganization * * * by withholding and refusing to declare dividends on said Preferred stock"; that they accomplished this by refusing during those years to declare such dividends although there were sufficient net earnings and assets for the purpose; and that the withholding of the dividends wrecked the Plan of Reorganization to the defendant's damage in the amount of $400,000. The fourth defense, the first counterclaim, has the added allegation that the conspiracy not only had the mentioned aim but that it was also intended "to force a sale of defendant's Preferred Stock in the Hightstown Rug Company to themselves at a ruinous price by withholding and refusing to declare dividends on said Preferred Stock", and that the said "withholding of said dividends

greatly depressed the value of said Preferred Stock \* \* · \* and enabled them to purchase certain shares" at the depressed value in addition to wrecking the Reorganization.

The sixth defense and third counterclaim alleges that the three parties sought to be joined conspired to wreck the defendant's Plan of Reorganization and "to force a sale of the defendant's said Preferred Stock in the Hightstown Rug Company to themselves at a ruinous price"; that in 1942 they induced the plaintiff to purchase the defendant's note from the Bank; that although the note did not grant to any assignee the authority to make the public sale of collateral which the Bank had been granted, the three alleged conspirators falsely represented to the plaintiff that said assignment of said note and collateral to him vested in said plaintiff the right to sell said stock at public auction and that the plaintiff did purport to sell the stock, pursuant to such representations, at public sale for the nominal amount of $500; that the plaintiff was the purchaser for the benefit of, the three alleged conspirators; "whereby said plaintiff by said fictitious and forced public sale of said stock destroyed the market value of the Preferred Stock of defendant to the damage of the defendant to the extent of $400,000".

The defendant has prayed for a judgment against the plaintiff and the said Davison, Gabrielson and Wolfe for $400,000.

It appears from the papers submitted that the plaintiff and the parties sought to be joined are all citizens of New Jersey, and the defendant is a Delaware corporation, now inactive and not doing business in New York or elsewhere, although it did business in New York until October 1934 when it surrendered its license to do business in this State. The transaction out of which the plaintiff's suit arose occurred in New York and is the result of business carried on in this State by the defendant which then had authority to do business here. The plaintiff's action was commenced in the New York Supreme Court, New York County, and was thereafter removed to this court because of diversity of citizenship.

The relief now sought by the defendant on this motion has previously been denied by Judge Coxe of this court, once upon a prior motion and again upon a motion for its reargument on March 11, 1943. At that time it was denied as a matter of discretion. When this motion appeared on the Calendar before me, I referred it to Judge Coxe since I did not wish to be put in the position of passing upon a prayer for relief which had twice been before him; but he returned it to the Motion Part for decision. The defendant contends that the denial by Judge Coxe was based upon the pleadings alone, and that the affidavits and examinations now before the court in support of this present motion should lead to a different conclusion on the part of this court.

■ It appears that a circuity of action will be avoided if the defendant's motion is granted. The defendant's counterclaims charge the plaintiff and the other three persons with a conspiracy to wreck the Plan of Reorganization and to obtain the defendant's preferred stock at an extremely low price. There is basis for the conclusion that at least the sixth counterclaim asserted should be classed as compulsory in character (which must be pleaded or else be deemed abandoned) as arising "out of the transaction or occurrence that is the subject matter of the opposing party's claim". The complaint pleads the note, its assignment to plaintiff, the sale of its collateral and a claim for the balance. The sixth counterclaim pleads that the acquisition of the note and the sale of the collateral was part of the conspiracy. Assuming that the sixth counterclaim did not grow out of the transaction represented by the note itself, it arose in part from the acts and conduct of the plaintiff and two of the proposed third party defendants in relation to the assignment of said note and the sale of its collateral.

At any rate, the counterclaims would surely fall within Rule 13(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, dealing with permissive counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Rule 13(h) provides for the bringing in of third parties whose presence "is required for the granting of complete relief in the determination of a counterclaim \* \* \* if jurisdiction of them can be obtained and their joinder will not deprive the court of jurisdiction of the action." [Rule 14(a) does not apply.]

■ It is clear that in this case the defendant is charging the plaintiff and the

proposed third-parties with having conspired to drive the preferred stock down to a very low value and to wreck the Plan of Reorganization, so that they thereby might acquire the preferred stock of Hightstown Rug Company owned by defendant, all to the defendant's damage. Whether or not the plaintiff had anything to do with declaring or refusing to declare the dividends involved in the counterclaim is not decisive of whether he was in the conspiracy with the three prospective third-party defendants who were directors. If plaintiff joined the conspiracy at some later phase, but knowingly and wilfully was instrumental in the accomplishment of its ultimate objective, he is jointly liable with the others for the damage suffered by the defendant as a result of their combined acts.

■ A plaintiff may state "as a single cause of action a series of wrongful acts which are alleged as steps in carrying out the tort of intentional destruction of the plaintiff's business without justifiable excuse". See opinion by Swan, Circuit Judge, in Original Ballet Russe, Limited, v. Ballet Theatre, Inc., et al., 2 Cir., 133 F.2d 187, 190, decided February 2, 1942. Defendant's counterclaims herein plead a similar tort. Plaintiff is alleged to be one of the tort-feasors. There are valid and cogent reasons for bringing in as third-party defendants the other alleged joint tort-feasors so that the issues presented by the counterclaims may be completely adjudicated in the one action. This will not impose any additional burden on the plaintiff.

■ Unless this court would lose jurisdiction of the action if it granted the relief sought, this is a case where the relief should be granted in order that needless circuity may be avoided. Rule 13(h). Defendant asserts that the plaintiff and two of the proposed third-party defendants are residents of New Jersey, and that the other third-party defendant is a resident of New York. Plaintiff claims that all three prospective third-party defendants are residents of New Jersey, of which plaintiff is a resident. That would make no difference on the question of diversity of citizenship. The three prospective third-party defendants would be residents of the same State as plaintiff, who in respect to the counterclaim of the present defendant would be a co-defendant with the three others. The defendant, Public Industrials Corporation, the proposed third-party plaintiff, is a Delaware corporation. It does not appear that any jurisdictional problems growing out of diversity of citizenship will arise by virtue of the joinder sought. The affidavits in support of the motion demonstrate that it will not be difficult for the nonresident third-party defendants to be served in this State and District because two of them are in business in the Borough of Manhattan, New York City, and the third is frequently present here on business matters at the office of the Hightstown Rug Company, of which he is president. Thus the requirements of Rule 13(h) can be satisfied.

■ On the question of venue, see Graver Tank & Mfg. Corp. v. New England T. Co., 1 Cir., 125 F.2d 71. It is unnecessary for the court to pass upon that question in determining the question of jurisdiction under Rule 13(h), but the following observation is pertinent. In the sixth separate defense and (third) counterclaim there are allegations in paragraphs 25 to 27, inclusive, which tie up the three third-party defendants with the plaintiff's purchase of the note in suit together with its collateral, and his subsequent sale of said collateral—the Hightstown Rug Company's preferred stock. It is alleged that they induced plaintiff to purchase the note and that plaintiff bought in the collateral at a nominal price for the benefit of the three prospective third-party defendants. It is also set forth, in an affidavit submitted in support of this motion, that the money used by plaintiff in the purchase of the note was furnished by one if not two of the third-party defendants, that the plaintiff furnished no part of the consideration, and that the collateral stock is now held by one of said third-party defendants. It is thus made to appear that the plaintiff is only a nominal party plaintiff and that one if not two of the third-party defendants are the real parties in interest. If any of the prospective third-party defendants thus launched the plaintiff, as their nominees, into this litigation which is properly before this District Court, it seems to me that a plea of lack of venue, in respect to the counterclaim, would be difficult for them to sustain.

■ I believe that in the exercise of a sound discretion the motion should be granted. Settle order on two days' notice.